IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KRISTIN GREENE | ) |
| | ) |
| v. | ) No. 3:21-0050 |
| | ) |
| KILOLO KIJAKAZI[1] | ) |
|    Commissioner of | ) |
|    Social Security | ) |

**To:** The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 18), to which Defendant has filed a response. (Docket No. 19.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket No. 18) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

# I. INTRODUCTION

On March 8, 2019, Plaintiff filed an application for disability benefits in which she asserted that, as of the alleged onset date of January 15, 2018, she was unable to work due to scoliosis, bulging disks in the back, arthritis, and anxiety. (*See* Transcript of the Administrative Record (Docket No. 16) at 65, 84, 108.)[2] Plaintiff's application was denied initially and upon reconsideration. (AR 65, 81.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Kerry Morgan on June 1, 2020. (AR 33.) The ALJ denied the claim on June 15, 2020. (AR 12-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 11, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2023.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of January 15, 2018 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: thoracolumbar column scoliosis status post Harrington rod placement in early adolescence with residual revered S-shaped thoracolumbar column scoliosis, degenerative disc disease with associated arthropathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [she can] occasionally climb stairs and ramps; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop; occasionally kneel and crouch; and never crawl. The claimant can tolerate occasional exposure to extreme cold; no exposure to vibrations; and occasional exposure to hazardous machinery and unprotected heights. The claimant is capable of maintaining attention, concentration, persistence or pace, in 2-hour segments of time, with customary breaks between segments, due to pain.

6. The claimant is capable of performing past relevant work as a Waitress, DOT code 311.477-030, SVP 3, light. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2018, through the date of this decision (20 CFR 404.1520(f)).

(AR 17-28.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Social Security Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is

substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if the "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id*. Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id*. Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id*. Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id*. Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id*. The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide

4

questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work and thus not subject to a disability that would entitle her to benefits. (AR 17-28.)

### C. Plaintiff's Assertions of Error

Plaintiff sets forth two assertions of error: (1) that the ALJ failed to adequately consider opinion evidence provided by certain physicians in formulating the RFC; and (2) that the ALJ failed to properly evaluate Plaintiff's subjective complaints. (Docket No. 18-1 at 13-23.) Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded pursuant to sentence four of 42 U.S.C. § 405(g), or alternatively that the Commissioner's decision be remanded under either sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 23.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all

5

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

**1. Opinion Evidence.**

Plaintiff first faults the ALJ for concluding that two medical opinions in the administrative record favorable to Plaintiff's application—one from consultative physical examiner Donita Keown and one from consultative mental examiner Paul Brown—were "not persuasive." (AR 20-21, 25-26.) Plaintiff accuses the ALJ of improperly substituting her own opinion for those of these qualified medical professionals, and of selectively relying on evidence to support the RFC determination.

The ALJ's analysis of medical opinions for disability applications filed after March 27, 2017, is governed by 20 C.F.R. § 404.1520c. The regulation makes clear that the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories that include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies and evidentiary requirements. *Id.* § 404.1520c(a)-(c). The two most important factors in the ALJ's evaluation are supportability and consistency. *Id.* § 404.1520c(a).

Dr. Keown provided a consultative examination of Plaintiff on July 9, 2019. Her accompanying report suggested that, during an eight-hour workday, Plaintiff would be capable of sitting for two to three hours with regular breaks, walking or standing for two to three hours, and

occasionally lifting 10 to 12 pounds for items positioned "at counter heights." (AR 509.) The ALJ effectively dismissed this opinion based on Dr. Keown's failure to reference any medical records documenting Plaintiff's prior treatment, as well as Dr. Keown's own mild examination findings, which included a normal gait and station, a negative Romberg test,[3] and a full range of motion in the hips, knees, and ankles. (AR 23, 25-26, 507-08.) The ALJ also found that Dr. Keown's suggested restrictions were not consistent with other evidence in the administrative record, which showed that Plaintiff had consistently exhibited normal balance, gait, and stance, no weakness in the lower extremities, full strength in the quadriceps, gastrocnemius, grip, biceps, and triceps, and a full range of motion in the fingers, hands, wrists, elbows, shoulders, hips, knees, and ankles during the relevant time frame. (AR 26.)

Dr. Brown provided two separate consultative mental examinations of Plaintiff, one on June 4, 2015, and one on June 13, 2019. (AR 398, 493.)[4] In a report following the first examination, Dr. Brown concluded that Plaintiff was mildly limited in her ability to remember and understand, but moderately limited in her ability to concentrate, persist, and keep pace, interact socially, and adapt. (AR 408.) Dr. Brown's second examination revealed slightly improved functioning, with his accompanying report concluding that Plaintiff remained mildly limited in remembering and understanding and moderately limited in social interaction and adapting to change, but that she

---

[3] A Romberg's test is a maneuver used "to evaluate the integrity of the dorsal columns of the spinal cord and is particularly useful in patients with ataxia or severe incoordination." Jessica Forbes & Heather Cronovich, *Romberg Test*, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK563187/ (last visited April 13, 2020).

[4] Although not explained anywhere in the record, it appears that Dr. Brown's June 4, 2015, examination was part of an earlier application for disability benefits filed by Plaintiff. (AR 398-99.)

was now "mild to moderate" in her ability to maintain concentration, persistence, and pace. (AR 502-03.)

The ALJ determined that such conclusions were not consistent with Dr. Brown's own findings, which noted that Plaintiff's intellectual functioning—based on measurements of her general knowledge, vocabulary, reasoning, critical thinking, problem solving, and planning—was at worst "slightly below average." (AR 408.) The ALJ also highlighted Dr. Brown's finding that Plaintiff possessed "average" empathy and social judgment and "low average" intelligence. (AR 407.) Additionally, the ALJ cited a string of office visits during which Plaintiff exhibited normal cognitive functioning, appearance, and grooming, appropriate affect and demeanor, cooperative behavior, and "euthymic mood and normal affect." (AR 21, 414, 420, 425, 436, 447, 461, 481, 602.)

The Court finds that the ALJ's conclusions with respect to the opinion evidence are supported by substantial evidence. For the physical consultative examination, the ALJ acknowledged that Dr. Keown specializes in internal medicine (AR 25), which encompasses a more general range of knowledge about Plaintiff's back symptoms than, say, an orthopedist would possess. The ALJ also highlighted Dr. Keown's apparent lack of familiarity with Plaintiff's medical history by noting the absence of any reference to prior medical records (AR 25), which is certainly relevant when considering the "provider's relationship with the claimant." 20 C.F.R. § 404.1520c(c)(3).

Most critically, the ALJ assessed the specific findings from Dr. Keown's examination and from treating providers before concluding that such findings undermined the supportability and consistency of the opinion. Despite Plaintiff's accusation of "cherry pick[ing] the evidence" (Docket No. 18-1 at 14), the ALJ did not ignore negative examination findings in the record. For

Case 3:21-cv-00050   Document 23   Filed 07/11/22   Page 8 of 15 PageID #: 763

example, the ALJ acknowledged "isolated instances of abnormal gait" before noting "significantly more often and consistent observations of normal gait," and referenced numerous office visits corroborating as much. (AR 23-24, 26, 530, 536, 542, 562, 568.) This suggests that the ALJ engaged in an even-handed analysis. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir.2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Plaintiff nonetheless notes that 2014 x-rays of her back suggested the presence of levoscoliosis (which has been described variably as "mild" or "moderate"), as well as disc space narrowing at multiple lumbar levels and "moderate-severe" dextroscoliosis in the thoracic spine. (AR 299-300, 414.) However, as discussed by the ALJ, more recent imaging in 2019 revealed "no significant narrowing of the spinal canal or neural foramina" in the lumbar or thoracic spine, nor any other remarkable findings. (AR 23, 621-22, 624-25.) And while Plaintiff points to multiple office visits with providers during which she reported back pain radiating into her legs (AR 419, 530, 536, 549, 574, 596-97), the ALJ cited just as many records documenting consistently normal or mild physical findings over a wide span of time. (AR 23-25.) The ALJ's failure to reference each individual physical finding in the record does not amount to reversible error. *See Daniels v. Comm'r of Soc. Sec.,* 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citation omitted).

Plaintiff's broad allegation that the ALJ improperly "interpret[ed] the evidence and rel[ied] on medical findings to discount Dr. Keown's opinion" (Docket No. 18-1 at 15) is similarly unavailing. Plaintiff's lone argument on this front is based on the Sixth Circuit's admonition that ALJs "must not succumb to the temptation to play doctor and make their own independent medical

9

findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted). Yet the ALJ's RFC formulation is in fact supported by and consistent with the medical opinions provided by two non-examining state agency physicians—Drs. George Walker and Thomas Thomson—who were familiar with Plaintiff's medical history. (AR 60-62, 75-78.) And contrary to Plaintiff's suggestion otherwise, the *Simpson* opinion makes clear that the ALJ is required to dissect and examine the strengths and weaknesses of any medical opinion presented during the administrative process:

> The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences … In weighing medical expert opinions, the ALJ is required to consider their quality and, thus, should consider the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices.

*Id*. (internal citations and quotations omitted). Moreover, it is the role of the ALJ, not a one-time examining physician, to determine an individual's ability to perform work despite her alleged impairments. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). Because the ALJ provided a fulsome discussion of the record, including significant medical evidence weighing against the conclusions drawn by Dr. Keown, the Court concludes that the ALJ did not err in finding that Dr. Keown's opinion was not persuasive.

Likewise, the Court finds no error in the ALJ's evaluation of Plaintiff's mental impairments. Plaintiff again argues that the ALJ improperly relied on her own lay opinion to dismiss Dr. Brown's conclusions. (Docket No. 18-1 at 18.) However, a review of the administrative opinion reveals that the ALJ instead discounted Dr. Brown's opinions based on "mild" and "average" mental health findings derived from Dr. Brown's own examination,

consistently normal findings documented during several office visits,[5] the extent of Plaintiff's daily activities, and the conservative nature of her treatment—consisting of procurement of a pet dog, dietary changes, and an increase in physical exercise (AR 18-21)—the latter of which "suggests the absence of a disabling condition." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013). And again, the ALJ's findings are consistent with opinions provided by two state agency physicians who reviewed Plaintiff's medical history, each of which concluded that Plaintiff's mental impairments were not severe and resulted in only "mild" functional limitations. (AR 57-59, 73-74.)

Moreover, Plaintiff argues that Dr. Brown's opinion warrants the inclusion of "further limitations" in her mental RFC (Docket No. 18-1 at 19), but she does not explain how adoption of any of Dr. Brown's findings would change the ultimate RFC determination. This is significant given that the ALJ and Dr. Brown each concluded that Plaintiff is only "mildly" limited in two of the four domains considered when evaluating mental functioning—understanding/remembering and concentration/persistence/pace—which Plaintiff testified were the only areas of functioning that impacted her. (AR 44-45.) Plaintiff thus fails to meet the relatively high burden of "demonstrat[ing] that the ALJ's determination … is not supported by substantial evidence," *Fasburg v. Comm'r of Soc. Sec.*, No. 1:13-cv-708, 2014 WL 5035379, at *6 (W.D. Mich. Sept. 29, 2014) (citing *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014)), which precludes the finding of reversible error. Accordingly, the Court finds that substantial evidence supports the ALJ's RFC assessment.

---

[5] Notably, Plaintiff suggests that the ALJ "cherry[-]picked" the evidence by discussing mental findings contained in office notes documenting her physical pain management, but then relies on other mental findings set forth in the very same office notes to argue that the ALJ ignored relevant evidence. (Docket No. 18-1 at 19; AR 442-44.)

### 2. ALJ's Evaluation of Plaintiff's Subjective Complaints.

The administrative opinion includes a finding that Plaintiff's statements regarding the severity of her allegedly disabling symptoms were "not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's description of her activities of daily living," and therefore could not be "wholly accepted." (AR 23, 26.) The ALJ cited specific evidence in support of this conclusion, including objective imaging reports of her back showing no acute physical findings, mild examination findings documented over the course of numerous office visits, and her stated ability to perform part-time employment for an extended period of time. (AR 23.) Plaintiff challenges this conclusion, arguing that the overall evidence instead supports Plaintiff's description of the severity of her symptoms. (Docket No. 18-1 at 21-22.)

If a claimant alleges the existence of disabling symptoms, the ALJ is required to evaluate the symptoms pursuant to a two-step process formulated by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). The ALJ must first determine whether there is objective medical evidence of an underlying condition and, if so: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* at 853. The Commissioner later incorporated this standard into Social Security Ruling ("SSR") 16-3p, which mandates that the ALJ consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). This evaluation is based on seven factors that include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity

of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*. at \*7-8 (citing 20 C.F.R. § 404.1529(c)(3)). SSR 16-3p's predecessor, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at \*3 (July 2, 1996). Although the Commissioner removed any reference to "credibility" in SSR 16-3p, there appears to be no substantive change in the ALJ's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Courts therefore continue to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), meaning that claimants seeking to overturn the ALJ's decision still "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

The Court finds no error in the ALJ's determination regarding the consistency of Plaintiff's allegations. In arguing otherwise, Plaintiff emphasizes that she complained of "sharp" back pain during office visits in 2014 and 2015, which is well before the alleged onset date. (AR 287, 382.) Plaintiff additionally points to a December 31, 2018, visit with a primary care provider during which she described pain and tenderness in her back (AR 596-97), yet she explicitly denied any such symptoms and exhibited a normal gait during her next eight appointments with this same

13

provider. (AR 580, 582, 584, 586-88, 590-95.) Such evidence, in conjunction with the ALJ's discussion of the numerous unremarkable findings documented throughout 2018 and 2019 (AR 23), represents much more than "a few normal objective findings," as characterized by Plaintiff. (Docket No. 18-1 at 21-22.) Indeed, the Court finds that it constitutes substantial evidence in support of the ALJ's decision.

A reviewing court must show significant deference to an ALJ's evaluation of a claimant's allegations of disabling pain. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("While in theory we will not disturb an ALJ's credibility determination without a compelling reason ... in practice ALJ credibility findings have become essentially unchallengeable.") (internal citations and quotations omitted). Because the ALJ's findings regarding Plaintiff's subjective complaints were "reasonable and supported by substantial evidence," they must be affirmed. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). Accordingly, the Court rejects this assertion of error.

## V. RECOMMENDATION

Based on the foregoing analysis, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 18) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en

banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

        Respectfully submitted,

        BARBARA D. HOLMES
        United States Magistrate Judge